UNITED STATES of America, Appellee,

v.

Howard HERSHKOWITZ,
Defendant–Appellant.

No. 1112, Docket 91–1700.

United States Court of Appeals,
Second Circuit.

Argued March 23, 1992.
Decided June 30, 1992.

David Cooper, New York City, for defendant-appellant.

Gabriel W. Gorenstein, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Christopher P. Reynolds, Daniel C. Richman, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before: NEWMAN and CARDAMONE, Circuit Judges, and SAND, District Judge.*

CARDAMONE, Circuit Judge:

The issue on this appeal involving an assault by a detention officer is whether a prisoner may be a vulnerable victim of a criminal act done under color of law for purposes of the Sentencing Guidelines.

* Hon. Leonard B. Sand, United States District Court Judge for the Southern District of New York, sitting by designation.

The Sentencing Guidelines pinpoint the plight of the vulnerable victim, and increase by two levels the sentence of a defendant who knew or should have known the victim was particularly susceptible to his criminal conduct. It is not unusual in a prison setting for guards to incur the animosity of prisoners in their keep, but when a detention officer, stung by a show of hostility, attacks a captive in his custody, the latter is basically defenseless, has no one to whom he can throw out a life-line, and is therefore a vulnerable victim.

## I

On July 6, 1990 defendant Howard Hershkowitz was employed as a detention enforcement officer at the Immigration and Naturalization Service's (INS) Manhattan detention facility. Edward Campbell was a detainee at the facility awaiting deportation. On that day female detainees were taken into the men's detention area to use the only available shower facilities. Observing the women through a glass partition, Campbell pounded on it to attract their attention. When several officers including defendant told him to stop, Campbell desisted but exchanged some "words" with the officers who had reprimanded him.

When Campbell continued to act in an agitated manner, a supervisor was summoned and decided that Campbell should be removed to a separate area where agitated detainees were held until they were able to "calm down." Defendant and three other detention officers escorted the detainee from his cell. While enroute to the "cooling-off" area, Hershkowitz grabbed Campbell by the hair and slapped him stating "This will teach you to disrespect me in front of sixty others, you Jamaican bastard." Once the officers placed him in the holding cell, defendant again assaulted Campbell, punching him in the face, chest, and stomach. The prisoner—who did not resist during either of these assaults—sustained a cut over his eyebrow as a result of this attack. The other officers made no attempt to intervene or to restrain their fellow officer.

Upon being told to submit a written report regarding this incident, defendant and the three other officers submitted statements claiming that Campbell had resisted being taken from his cell to the "cooling off" area and had to be subdued. Subsequent internal investigations revealed the falsity of this report. As a result Hershkowitz was charged with assaulting a prisoner in violation of 18 U.S.C. §§ 242 and 2, and submitting a false statement to the INS in order to conceal the assault, in violation of 18 U.S.C. § 1001. On June 12, 1991 he pled guilty to the assault charge. The false statement charge was later dismissed pursuant to the plea agreement.

In its Presentence Report the Probation Department calculated appellant's base offense level at 12. This was determined by using the provision in the United States Sentencing Commission's *Guidelines Manual* (Nov.1991)[1] (U.S.S.G.) applicable to an 18 U.S.C. § 242 offense, U.S.S.G. § 2H1.4(a)(2), which provides for a base offense level of 6 plus the offense level for the underlying offense, in this case minor assault, which is 6. U.S.S.G. § 2A2.3(a)(1). The Probation Department did not recommend an upward adjustment based on the vulnerability of the victim, but did recommend an upward adjustment of two levels for obstruction of justice, which the district court declined to impose. It further recommended a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

At sentencing on November 22, 1991 the government urged that a vulnerable victim enhancement pursuant to § 3A1.1 of the Guidelines should be imposed because Campbell's status as a detainee rendered him particularly susceptible to appellant's illegal assault. Hershkowitz challenged this enhancement asserting that Campbell's status as a victim was already factored into the offense level for a civil rights violation committed by an official acting under color of law. The sentencing court agreed with the government and ruled that a two level vulnerable victim enhancement was appro-

---

**1.** Although appellant's offense conduct occurred in July of 1990, the applicable Guidelines are those in effect at the time of sentencing in November of 1991. *See United States v. Lara,* 905 F.2d 599, 602 (2d Cir.1990).

priate. The court also decided that defendant was entitled to a two level reduction for acceptance of responsibility. This resulted in a total offense level of 12. The court thereupon imposed a sentence of ten months imprisonment, five of which were to be served by home detention, the minimum sentence permitted under the Guidelines. Pursuant to the plea agreement, the sentencing court also made it a condition of Hershkowitz' sentence that he neither seek nor obtain employment with any law enforcement or corrections agency.

## II

■ The sole issue on appeal is whether the sentencing court properly applied a two level enhancement on the basis of the vulnerability of the victim under U.S.S.G. § 3A1.1, that provides for such enhancement if:

> the defendant knew or should have known that [the] victim of the offense was unusually vulnerable due to age, physical or mental condition, or that [the] victim was otherwise particularly susceptible to the criminal conduct.

Because appellant does not contest the district court's findings of fact, but rather its interpretation of the Sentencing Guidelines, our review is *de novo*. *See United States v. Castagnet*, 936 F.2d 57, 59 (2d Cir.1991); *United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990).

Hershkowitz contends that the district court erred in applying U.S.S.G. § 3A1.1 since the vulnerability of the detainee was merely a result of Hershkowitz's status as a guard, a factor already accounted for in the U.S.S.G. § 2H1.4 calculation applicable to a violation of civil rights under color of law. The Commentary to § 3A1.1 states a vulnerable victim adjustment should not be made "if the [underlying] offense guideline specifically incorporates" the factor upon which a finding of unusual vulnerability is predicated. U.S.S.G. § 3A1.1, comment. (n.2). Thus, defendant argues, the sentencing court engaged in impermissible double counting since Campbell's vulnerability was a factor specifically incorporated into the offense level under § 2H1.4.

■ Defendant misconstrues the source of Campbell's vulnerability. The basis for concluding that he was particularly susceptible to Hershkowitz's criminal conduct was his status as a prisoner in a detention facility, in the custody of, and surrounded by, four guards when the assault occurred. These considerations are distinct from and in addition to the fact that defendant's actions were taken under color of law. In other words, that a defendant is acting under color of law does not necessarily contemplate a victim who is in custody and under defendant's control. Nor does acting under color of law presuppose that the victim will be surrounded by defendant's fellow law enforcement officers, whose presence increases the coercive nature of the encounter. These are the factors the district court found, correctly we believe, rendered Campbell unusually vulnerable to appellant's attack under U.S.S.G. § 3A1.1.

Consideration of these factors did not lead to an impermissible enhancement under the Sentencing Guidelines, as illustrated by the relevant provisions' distinct factual bases and purposes. The Commentary to U.S.S.G. § 2H1.4 explains that the increased offense level for an "offense [committed] under actual or purported legal authority" reflects the "compelling public interest in deterring and adequately punishing those who violate civil rights under color of law." U.S.S.G. § 2H1.4, comment. (backg'd.). In contrast, the vulnerable victim adjustment under § 3A1.1 applies to a broad range of circumstances "where an unusually vulnerable victim is made a target of criminal activity by the defendant," U.S.S.G. § 3A1.1, comment. (n.1), reflecting the public interest in more severely punishing those whose choice of victim demonstrates an "extra measure of criminal depravity." *United States v. Paige*, 923 F.2d 112, 113 (8th Cir.1991). These sections address independent sentencing considerations. Section–2H1.4 plainly does not incorporate a victim's increased vulnerability to defendant's illegal conduct—due to factors such as his status as a detainee and the presence of a defendant's fellow officers—in setting the offense level. Consideration of these factors did not lead to impermissible double counting. *See United States v. Altman*, 901 F.2d 1161, 1165

(2d Cir.1990) (where Guidelines provision does not incorporate victim's particular vulnerability, vulnerable victim adjustment proper); *United States v. Salyer*, 893 F.2d 113, 115–16 (6th Cir.1989) (§ 3A1.1 enhancement due to race of victim of cross-burning offense appropriate; Guideline for conspiracy to interfere with civil rights does not presuppose that victim will be member of racial minority group).

■ Defendant's assertion that a § 3A1.1 adjustment can only be premised on factors "inherent" in the victim—for example, age or physical condition—that are likely to make that person particularly susceptible to the illegal conduct is also without merit. Although listing such factors as examples tending to show vulnerability, the section nonetheless specifically provides for enhancement in cases where "a victim was *otherwise* particularly susceptible to the criminal conduct," without limitation as to the reasons for such vulnerability. While the focus must remain on the victim's individual vulnerability, *see United States v. Smith*, 930 F.2d 1450, 1455 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), the totality of the circumstances, including the status of the victim and the nature of the crime, must be taken into account in determining the applicability of the vulnerable victim enhancement. Thus, the sentencing court properly considered the victim's status as a detainee and the presence of other officers at the time of the attack in applying § 3A1.1. *See United States v. Long*, 935 F.2d 1207, 1212 (11th Cir.1991) (totality of factors, including isolated location of victim's home, racial isolation, and fact that crime occurred at night, justified application of § 3A1.1); *Salyer*, 893 F.2d at 117 (same).

■ Hershkowitz's final contention, that the enhancement was improper because he had not "specifically sought out" the victim because of his unusual susceptibility, is similarly unavailing. By its own terms, § 3A1.1 governs cases where the defendant "knew or should have known" of the victim's unusual vulnerability. It is of no consequence therefore whether Hershkowitz actually was conscious of Campbell's increased vulnerability when he assaulted him in the corridor and later in the holding cell. *See Salyer*, 893 F.2d at 117. It should have been apparent to appellant, as a detention enforcement officer, that Campbell was not in a position to resist his illegal assault. This is especially true as the assault took place in the presence of three other officers who, as the district court observed, the appellant could have anticipated would very likely have sided with their brother officer. Under the circumstances, appellant knew or should have known that the victim was particularly susceptible to his illegal assault. Consequently, the § 3A1.1 enhancement was properly imposed.

### III

The judgment of the district court is affirmed.